We have four cases to be submitted today on oral argument. We'll hear the first two and then take a brief recess before completing the arguments. And we'll start with United States v. Hernandez-Montes. Mr. Martin. May it please the Court, my name is Scott Martin and I represent Mr. Hernandez in this appeal of the 48-month sentence that he received upon his conviction for illegal reentry. Mr. Hernandez contends the District Court reversibly erred when it applied a 16-level crime of violence enhancement under Guidelines Section 2L1.2 based on his prior Florida convictions for attempted second-degree murder with a weapon. Today I'll be referring to that Florida offense as attempted depraved mind murder. The standard of review is de novo and today I intend to address why the Florida offense does not qualify as generic attempt or more broadly as attempted. Florida attempt is broader than generic attempt. First of all, we consider what generic attempt is, it's an intent to commit some other crime. That's what we know from Sanchez and from Garcia Figueroa. The second component of generic attempt is a substantial step in furtherance of that intent. The problem we have here in this case is that in Florida, if the underlying crime is a general intent crime like depraved mind murder is, then the state can prove an attempt of that crime without ever establishing the defendant intended to commit the underlying offense. That's discussed at length in the Florida Supreme Court case of State v. Brown and the dissent by Justice Harding in that case. Depraved mind murder is an offense where the completed crime does not require a specific intent to kill and therefore an attempt does not require a specific intent to kill. Attempted depraved mind murder, the elements of that offense is that the defendant intentionally committed an act, this is the elements of the Florida offense, which could have resulted in death of someone but did not, and that the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life. And so that does not require a specific intent to kill. Moreover, generic attempted murder, I know we've got all these intricacies with the guidelines and especially crime of violence, and I know we use the categorical approach, we don't look at these specific facts, but we have a backdrop here, as I understand it, of a man that shot three times and hit one person, shot three different people and hit one, is that correct? Yes, well the PSR in this case says that the duo drove up to the victim's residence, exchanged words with the victims and then opened fire with a .25 caliber blue steel firearm. So that was the, those were the facts in the PSR. And hit one of the three. I believe that's correct, sir. So it's just hard to imagine how that cannot be a crime of violence. Again, I understand where you're coming from, but explain how that isn't, how Florida would require more intent than that, the statute. What is it in the statute that would allow not having to have intent to engage in attempted murder? Okay, so for example, in State v. Brady, which is a case that's discussed in Brown, and it's also cited in our briefs, that's a case where the defendant was charged, well, this is the evidence from State v. Brady, the evidence at trial reflected that Brady fired a single shot at Ricky Mack, intending to murder Mack. The bullet missed Mack, but hit an unintended victim, Toya Harrell, injuring her in the hand. So then the jury ended up convicting Brady of attempted second degree murder of Mack and Harrell. So even though he didn't intend to hit Harrell, they convicted him of second degree murder of Mack. And the court in that case said that based on Gentry, which is another Florida Supreme Court case, and the evidence presented at trial, as outlined above, which is basically that evidence I just told you about, it would appear that a jury could reasonably conclude that Brady intentionally committed an act, eminently dangerous to others, including Mack and Harrell, without regard for human life, which would have resulted in death had the bullet fatally struck either Mack or Harrell. That is, by intentionally firing a deadly weapon in close proximity to both Mack and Harrell, the defendant intentionally committed an act that, had death resulted, would have constituted second degree murder as to either Mack or Harrell. So that's an example of attempted second degree murder where an unintended victim, a bystander, was hit, but the defendant was still convicted of this offense, attempted depraved mind murder in Florida. So that would also answer the question of whether there's a realistic probability of whether the Florida . . . Well, what you just explained, if I heard you correctly, would indicate that this crime of violence enhancement was correct. He pulled his pistol and shot three times and hit one. Now, again, I know we don't look at the specific facts, but in looking at the statute, that's what I'm asking you about. What is it in the statute that you base your contention on that it doesn't require intent? That it doesn't require intent? Yes, sir. Well, in the . . . Isn't that your argument? You can commit attempted murder without intending to under the statute? Yes, exactly. Yes, sir. That's what I'm asking. The intent goes to the actus reus, which is the act. Exactly. Shooting, not the criminal result, which is killing. I understand. So what is it in the statute that you base you don't have to have intent to commit attempted murder? The elements of the statute . . . All right. Read them to me. The elements of . . . Okay, so the completed . . . I'll start with the completed offense. The elements are the victim is dead, the death was caused by a criminal act of the defendant, and the act was eminently dangerous to another in evincing a depraved mind regardless of attempted depraved mind murder, but the defendant intentionally committed an act such as a shooting, which could have resulted in the death of someone, but did not. Okay, that's general intent. You intend the act, and the act was eminently dangerous to another and demonstrated a depraved mind without regard for human life. Depraved mind is basically a heightened form of recklessness. So you're not intending to kill that . . . You don't necessarily have to intend to kill that person. And so that's what makes Florida an outlier, is because there's only three states in the entire United States that say you can intend to commit a reckless . . . a crime that requires only recklessness as the result. That's Colorado, Wyoming, and Florida. But every other . . . In our survey of the law, we found 38 states that explicitly said that you can't . . . that makes no sense. It's illogical. And that's the . . . You want us to look at the combined offense of attempted second-degree murder, and you want us to apply the categorical approach. But if we follow the approach in Rodriguez-Escarano, which was the federal drug conspiracy statute, that really just looks at that guideline note, do you lose if we follow the approach in that case? No, Your Honor, we don't. Our position is that unlike in the conspiracy context, which there's no evidence that the sentencing commission would have intended for attempt to mean anything dramatically different than the generic contemporary meaning of attempt. In the conspiracy cases, there was a split . . . there was a divide between federal law and state . . . and a number of states in the model penal code as to whether the generic conspiracy requires an overt act. Well, we don't have that kind of division and authority here about whether attempt requires specific intent to commit the underlying offense. It's pretty . . . the weight of authority is overwhelming in our favor. So, I don't think that the government can point to any evidence that the commission would have considered anything other than generic contemporary meaning. And, for example, in Braxton, the Supreme Court, considering federal attempted murder of an officer in a footnote said that the common law attempt requires specific intent, and it interpreted the federal statute as requiring specific intent to kill. So, I don't think that the commission would have viewed attempt crimes any differently than what the Supreme Court's interpreted federal drug conspiracy cases. The cases you cite for . . . that you say compel us to look at the statute as a whole, attempted second-degree murder, as opposed to looking at does Florida attempt satisfy the standard attempt meaning, and then does second-degree murder satisfy that offense, they're typically cases, especially the ones from other circuits, where the substantive offense lacked the required mens rea, and then the court says, yeah, but when you throw attempt in there, that gives it the necessary mens rea. So, they actually all found that it was a crime of violence. This is a different situation where you're wanting the combination to take away the mens rea. Does that matter, the difference? Your Honor, we've argued it both ways in this case. We feel that we're entitled to prevail under either approach. On the one hand, Pascasio Rodriguez was considered Nevada conspiracy to murder. The court stated that it believed that its inquiry should be narrowly focused on the defendant's actual offense of conviction and compare it to its generic counterparts. That would be comparing Nevada conspiracy to murder with generic conspiracy to murder, and this was the approach of Castro Gomez, which is the Tenth Circuit case, and Gomez-Hernandez, which is the Ninth Circuit case. Mr. Hernandez agrees with that approach, generally, because it does compare his actual offense of conviction to the generic counterpart. It seems to make the most sense, but he also recognizes that in cases such as Garcia Figueroa, which considered Florida attempted aggravated battery on a police officer, this court did separately examine attempt from the underlying offense after it had already found that the substantive offense had use of force as an element. So, we've argued it both ways. We feel we're entitled to prevail under either approach. We've just offered what we think is an approach that makes more sense that's narrower when we argue that it should be considered as a whole. Both sides have briefed extensively the Pascasio-Rodriguez case. Why don't you tell us what your take is on that? Well, our take on the Pascasio-Rodriguez case is that the court was wrestling with the various ways to interpret the application note 5 to the guideline, which has conspiracy, aiding and abetting, and attempt, and then the substantive offense and how to analyze it, whether you apply a generic approach or whether you just look at the language of the guideline itself to determine whether it comports with the generic offense. Pascasio analyzed, in its categorical analysis, it analyzed conspiracy by itself. Then it said, well, we find it more appropriate, or we believe it's more appropriate to analyze it more narrowly as conspiracy to murder. So, it found under that analysis that Nevada conspiracy to murder comports with generic conspiracy to murder. But then it went one step further and said, well, we think that under the language and context of the guideline that the sentencing commission would have intended that a conspiracy would not have an overt act requirement because a number of federal statutes do not have an overt act. I think there were something like 16 states that don't require it. So, it said that under any of these approaches, basically, the crime qualified as generic conspiracy to murder. This case is different because we don't have that, as I was saying earlier to Judge Costa, we don't have that division of authority on what generic attempt requires. Pretty much there's overwhelming weight of authority that it requires a specific intent to accomplish the criminal result, which in this case would be the crime, the killing that's described by the crime of murder. So, Your Honors, that's the sum and substance of our argument. If there are no more questions, I'll reserve the remainder. You've saved time for rebuttal. Thank you. Yes, thank you. See you again. It's been a while. Yes, sir, it has. Thank you. May it please the Court. To address the claim of Would you start with the standard of review? That's exactly where I was going to start. Oh, good. Thank you. Because the position of the United States is it's plain error. And the claim that he's raising, as I understand his claim, is that generic attempted second-degree murder requires a distinct mens rea element from the completed murder, one that limits the culpability to specific intent to kill. So he's claiming that there should be basically a new methodology employed by the district court and this court, any court that's construing it, and that you, as Judge Costa said, you look at the generic meaning of attempted murder rather than applying the approach that you have traditionally employed, as you did in Did you assert in your brief that plain error applies? What I did was I set out in detail the objections that he made and I put in the plain error and at best I can do, if I could turn back the clock, I would brief it more fully. Where do you mean? You said you put in the plain error. I put in the standard, the plain error standard, but did I extrapolate further and go into greater detail on why it's not plain error and it's not just, I approached it from the standpoint of it's error. I mean, there is no error. What I should have done, and I apologize to the court, I should have taken it one step further and explained why it is not plain error because he's asking for the court to deviate from the traditional standard or methodology that you've used traditionally and that what he's done is that looking at his objections that he made at sentencing in his PSR, you know, facially it looks like he's raising the claim but then what ends up happening is that what he's actually doing is he's telling the district court that it's just simply foreclosed. So what he's done is he has denied the district court of any opportunity to address the claim at all. Well, in that I had the same question as Judge Costa because I saw you put out the regular reasonableness standard of review about procedural error and abuse of discretion and then you had the plain error standard of review, but I didn't see that you were taking a position, but of course we, not the parties, decide on our standard of review and it seems in the written objections in district court, the defendant argued Florida's definition of attempt was broader than the modern generic definition and that's why I'm just struggling with why is this plain error. Well, that's, I was struggling with that too. But when you, when the argument that he's raising before you is not just what he objected to is that it's a very specific argument that you have to in your construction of or the method by which you determine whether this is a crime of violence that you, rather than doing, as I was getting ready to say, doing the traditional view which is set out, for example, in God, I can't pronounce the name, G'day or G'day, and that is that first thing you do is you evaluate whether the underlying substantive offense is, falls within the, the, whether the underlying substantive offense for the state's, the state statute, the substantive offense, the Florida state statute, God, I'm having trouble saying this, whether Florida's second degree murder statute falls within the generic definition of murder. Once you determine that, then the question is, is that, okay, what was he convicted of? It's attempted second degree murder. Well, then the question becomes, is, okay, so has, how does the sentencing commission treat attempt? How's the treated, sentencing commission treated attempt? It's exactly as you had said in Pas, Garcia Rodriguez and the other cases, is that the, the sentencing commission has not, has not distinguished between attempt and a completed offense in its enumerated offenses. And actually, there is one case, and, and I apologize again for not citing this case to you in my brief, but I would like to do so now, and it's Esperanza, it's an unpublished case, Esperanza, Andrade, 418, Fed Appendix 356. And what this court has said, attempt need not be separately analyzed because an analysis of the elements of the state statute prohibiting the underlying crime is sufficient for classification purposes. So the position that the court has taken is, is that the sentencing commission has not distinguished between an attempt and a completed offense. So what the, the, the defendant or Hernandez has asked the, was asking the district court to do, or is asking you to do for the first time on appeal, is actually do distinguish between them. And so did, the question is, did he make, did he give the district court the opportunity to address this question? And it comes down to the, the specificity of his objection, which, which for the most part, his objection was to, to, to go into the, the, the, the dissent in the opinion in, in, from Gentry and the cases that are following. As to, as to the, the traditional or the, the method that the court, the question becomes then, then does, does his attempted second degree murder fall within the generic definition of the substantive offense? For attempt, the, what this court has done, when he's talking about the mens rea element, the generic attempt does not have a specific intent to kill. This court held in, in, in Majudano, is that the mens rea element, which I think is the, the most, it's, it's articulated, it's expressed, well, I've seen it expressed this way in the Second Circuit, in the Sixth Circuit, in the Eighth Circuit, but the way that they expressed it is, the mens rea is, is has the defendant acted with the culpability required for the commission of the crime for which he is charged with attempting? Then the actus reus is, is that has he taken the substantial step that there must be an act strongly cooperative of the actor's criminal intent? And the act, of course, must be more than mere preparation. And when you look at the, the, the Florida's second degree, well, actually, let's go back. Look at Florida's attempted, attempt statute. Florida, well, this court, the court held in Garcia Figueredo, that it is, it is, is not broader than the scope of the generic definition of attempt as, as for purposes of 201.2. And what Florida has done is they have construed this statute as, it's attempt statute, as having the same mens rea element as generic criminal attempt. And that is, that is the defendant acted with the culpability required for the commission of the crime for which he was charged in attempting. So he has to have, and Judge Marcel, you are correct, he has to have specific intent to commit the crime. And when you look at the, the, the jury instructions that are published by the Florida Supreme Court, what are the elements of, of Florida's attempted second degree murder statute? It, there are two. One is, and I, the best way to do it is just simply to quote it for you. Defendant intentionally committed an act which would have resulted in the death of the victim except that somebody, that someone prevented defendant from killing the victim or he or she failed to do so. And the second element is the mental culpability required for second degree murder. And that is, the act was imminently dangerous to another and demonstrating a depraved mind without regard for human life. So essentially, Florida applies this in accord with the generic definition of attempt. But I didn't, I didn't see in your brief that you dispute the defense's characterization that only three states allow or have offenses for attempted murder that don't require the specific intent for a murder to result. That's true. I've, I've read as many law review articles as I can and tried to read, going through the state statutes, it's, it's interesting when you read them. For example, there are some states that don't have, require specific intent, but the intent may be in the, may be found in the knowledge element. For example, Florida has in the, the, the depraved heart indifference culpability requirement on second degree murder. One of the, the requirements is, the knowledge is, a person of ordinary judgment would know, is reasonably certain to kill or do serious bodily injury to another. So my question is, would a state that recognizes the specific intent to kill, notwithstanding that, that Florida does not and considers this as a general intent crime, would another state recognize this as, as, if you're going to call it implied specific intent to kill? Would another state recognize this as, as having the specific intent to kill? But for purpose of, of when you're applying the, the sentencing, the sentence in compliance with the sentencing commission's intent, the question becomes, does the offense for which the defendant has been convicted meet, fall within the, the generic definition of murder? And for purpose of second degree, attempt of second degree murder, it has the culpable mental state of, of depraved heart indifference, which is, as this court has recognized, is an element of generic murder. Now, in other states where, which, which recognize specific intent to kill as the necessary element, that too would fall in, in the generic definition of murder because it is also a culpable mental state that is recognized. So, the question is, is that, is that, is that Florida, the elements of his, his prior conviction are not broader, have not broadened. The Florida statute or the elements of his conviction are not broader than the generic definition of murder. And according to, going back to, to the, the Castro-Gomez, one of the points is, is that, is that Judge Costa, you are correct, or I think you're correct, that the, the, the issue before the Tenth Circuit in that case was substantially different. In fact, it was whether a state statutory definition of intent can cure a substantive offense's overbroad intent requirement for purposes of determining whether an attempt to commit an offense constitutes an enumerated crime of violence offense for purposes of 2L1.2B1A2. In this case, in Florida's case, is that, is that you don't have to go there because it, it falls within the generic definition of the substantive offense anyway. But isn't the overall point of that case and the others like it that you, you look at the actual offense that are convicted of, which is not second degree murder here. I mean, if it was just second degree murder, there'd be no debate. Right. There are precedent, but you look at the actual offense, which is attempt to commit second degree murder, and then look at whether that fits within what most states are doing. And so when you, if you, was that the Sentencing Commission's intent for you to do that? And that's, that's essentially the ultimate question. If the Sentencing Commission wanted to treat it as, as attempt to mean a conviction formally denominated as an attempt, it could have done so. It could have listed as enumerated offenses. It could have listed murder, assault, attempted murder. It knew quite well that, that attempted murder may be recognized as, as a, a conviction formally denominated as an attempt. Look at 2, 2A 2.1, which is entitled, what's it called? Assault with intent to commit murder or attempted murder. The Sentencing Commission was well aware of that, but it elected not to include it as an enumerated offense. Is that the court? Thank you. Thank you. Martin, you save time for rebuttal. Your Honors, I'd, I'd like to address the standard of review, but, but first while we're on that last point, I would like to say that, that this court, I don't feel that this court would be at liberty to just jettison the categorical approach. In Garcia-Figueroa, which is a fairly recent case, 2014, this court said, in United States v. Sanchez, this court set forth the framework for determining whether an attempt qualifies as a crime of violence for the purposes of 2L1.2. As explained in Sanchez, the guidelines do not define attempt. Therefore, the court employs a common sense, a common sense term according to its generic contemporary meaning. So basically, you have a recent case that is saying that the meaning of attempt under 2L1.2 is its generic contemporary meaning. Now, to the standard of review, in our written objection, we did frame it as a foreclosed objection that was based on a misunderstanding of the court's precedent. Basically, we misunderstood the impact of Garcia-Figueroa. And as Judge Barksdale pointed out, you don't waive that issue anyway because we have to rule on the standard of review? Yes, Your Honor, you do have to rule on the standard of review. And we haven't, our position is that we haven't waived the arguments that we're making when we framed it as a foreclosed issue in the district court because of cases like Andino-Ortega which say a misunderstanding of this court's precedent is not a waiver, it's not an invited error. And in our written objections, we did alert the district court to the fact that in Florida, unlike in most other jurisdictions, an attempt crime is not always a specific intent crime. We cited the Florida Supreme Court Justice Harding's dissent in Brown v. State. We also, at sentencing orally, we made this point generally when we were arguing for a case at page 79 of the electronic record on appeal. And our position is that all of this was sufficiently specific to alert the district court to the nature of the error that we're presenting here in this appeal today. You may be right. I don't know that just by making an argument below, even though you say it's foreclosed, you've preserved it for appellate review. But doesn't that, I mean the whole point of requiring people to make, preserve their objections in the lower court is to give the district court, in the first instance, a chance to rule. And when you tell the trial court, well, we lose this argument, the Fifth Circuit forecloses it, you're not giving the district court an opportunity or certainly encouraging the district court to consider your argument. So why should we treat it as de novo review? Well, first of all, as I said, in Andino or Ortega, the misunderstandings of the law are different from . . . This wasn't a case where we were correct that it was foreclosed. This is a case where counsel misunderstood the impact of Garcia-Figueroa. It was not an intentional or knowing relinquishment of this argument, which makes it different. Secondly, the district court judge did accept our written objections, which had these arguments in them. And typically, written objections are sufficient to preserve an error for appeal. We know that from . . . But Judge Ramos never analyzed the issue, I assume, because even the defense is telling her it's foreclosed. That's true. The judge did not talk through it at the sentencing hearing, although our position is she did have the opportunity to for two reasons. One, they were in the written objections, which she accepted, and she could have looked at them and she could have recessed. She could have taken a moment to look at them. Secondly, we did raise the argument orally when we were making our objection. On page 79 of the transcript, we point out, and I'm quoting here, but in my research on Florida statutes, Supreme Court of Florida Justice actually pointed out that the Florida attempted murder statute requires lesser culpability. It requires general intent, which is different from almost every single jurisdiction in the U.S., which requires specific intent. And this attempted depraved mind murder doesn't actually exist in most jurisdictions. So although we had presented it as a foreclosed issue, we did essentially make the arguments, the heart of the argument that we're making now in this appeal, and the judge had an opportunity to hear that, and so we feel that the judge had an opportunity to decide this issue. So is the district judge, when you say, Judge, this issue is foreclosed, but Florida requires less culpability, is the district judge supposed to then stop the sentencing hearing and go research all of this before imposing sentence? I mean, as Judge Costa says, the whole point of objections is to tee it up, tee up the issue with the district judge so the district judge knows exactly what you're saying and can rule. I understand this. I understand your point, Your Honor, but we're saying that it was sufficiently specific to alert the district judge that there was this error, and the judge has clerks. The judge is able to understand that there may be an issue here, and I think that it could have asked more questions, could have addressed the argument. That's our position, Your Honor. All right. Thank you. Thank you. This is under submission.